Read one case on for argument this afternoon, number 061109, Steen v. United States. Mr. Kaufman, you may begin when you're ready. My name is Joel Kaufman. I'm a law firm of SEPTO and Johnson, and I'm appearing here today on behalf of Mr. Ron Steen. Mr. Steen is a Pacific salmon fisherman from Washington State. Mr. Steen sought and was denied benefits under the Trade Adjustment Assistance for Farmers Program. It is the denial of those benefits that we're here contesting today. The facts on this case are not in dispute, Your Honors. In the two years in question, Mr. Steen's income dropped. His income from salmon fishing, which was a certified product, dropped dramatically to around 25 percent of the amount that it was in the first year. During that same time period, his income reported to the IRS under Schedule C increased modestly. Because of that, the Secretary denied Mr. Steen benefits on the grounds that his net Was there any question as to the inclusion, if any, of other income sources besides fishing in the Schedule C? Your Honor, Schedule C is the IRS mechanism for reporting income from sole proprietorships. Right. At the time that Mr. Steen submitted his Schedule C information, he also submitted information to demonstrate to the Secretary what the amount of that income was that was related to salmon. So the difference What I'm trying to get at is we've got salmon fishing, all fishing, and all sources, including some that may not include fishing. I just want to There are some CIT cases involving the question of whether you get the Schedule C includes income other than fishing. That is, I take it, not at issue in this case? In this case, Your Honor, it included income from halibut fishing. It also included income from snow crabs and Alaska king crabs. Okay, but not from renting a pleasure boat or something like that? No, Your Honor. Okay. I guess the question would be whether fishing for crab is the same as fishing, but in that sense, it was all from activities related to the ocean. Bringing wildlife out of the sea. That would be perfect, Your Honor. That's fine. Okay. That answers my question. Thank you. Mr. Steen submitted to the Secretary the information that was requested at the time. By the regulations, he was required to submit a Schedule C information. He did so. The problem, as we see it in the way that the Secretary has interpreted the statute, and particularly interpreted net fishing income, which is not a term that exists in the statute, by not limiting it to the product which was subject to the certification, he reads out of the statute certain additional provisions that are contained both in that section dealing with individual producer benefits and with an earlier section of the statute. In addition, we believe that this interpretation, where essentially the Secretary has rendered irrelevant any nexus between import competition and the loss of income demonstrated by Mr. Steen, is totally inconsistent with congressional intent in providing relief for farmers and for, in this case, fishermen in aquaculture situations relating to changes in import patterns and import practices. Your argument would apply, I take it, equally if this were a farming case? I mean, if you were raising new potatoes and suddenly new potatoes were imported, I suspect the importation issue is not the same, but it would be the same argument, would it not? In certain respects, it would be the same argument. In other respects, I think there are differences between how you interpret net farm income as it exists in the statute and net fishing income, which is a term that was developed by the Secretary in situations involving aquaculture but which does not appear in the statute. Why would it be different? Well, it's different for one reason. I understand that the term is not there, but the Secretary, and you don't disagree with the Secretary's having created the concept of net fishing incomes, I understand. Absolutely not, Your Honor. You disagree with the implementation of that term, but the implementation parallels, as I understand it, the net farm income as well, does it not, the way that net farm income is treated, i.e., all products? Presumably it does, Your Honor, except that in the case of net farm income, what the Secretary directs the producer to submit is information on Schedule F, which is specifically farm-related income. Right. In the case of net fishing income, at that time, the way the regs were written, the producer was, or the fisherman was required to submit Schedule C, which is not limited in that respect. Well, except that the CIT cases I was referring to earlier seem to have limited it to the fishing income. Okay. But, I mean, as such, is that the only difference? Otherwise, it's parallel? Well, no. I think, Your Honor, the other difference would be just in terms of the breadth. I mean, clearly the Secretary has some discretion in terms of what should be or not included in net farm or net fishing income, and we're not disputing that. But the problem we have with the particular definition that they've employed, particularly with respect to net fishing income, is that it ignores these other statutory provisions. I guess that part of the argument would be the same whether you're talking about net farm or net fishing income. It seemed to me it wouldn't. Okay. Go ahead. Particularly the two provisions that we're talking about exist in 2401AE2, which is a requirement of the Secretary in situations where separate products are included in a commodity to treat the separate products differently and treat each one as a commodity for purposes of several of the considerations in Section 2401A, which is the section on group eligibility, but also for purposes of Section 2401E. If, in fact, the Secretary is to treat separate products within a commodity as separate commodities for purposes of 2401E, we believe that there's language in the statute that directs the Secretary to limit the income test in 2401EA1C. But if the commodities are fungible, like they are here, halibut is a fish, salmon is a fish, the only part of the genus which is not really a fish is a crab, the aspect of the generic type of commodity coming out of the ocean. Isn't the Secretary at least able to make those all into one fungible commodity? No, Your Honor, because halibut is not subject to certification here. The only product that's subject to certification here is salmon. The only product that has been demonstrated in 2401A to be suffering from import competition is salmon. It would be, in our view, be inappropriate for the Secretary, and it was inappropriate, to consider other sources of income, even if they're coming from the ocean, for purposes of making that consideration. There isn't, in fact, under the Secretary's own interpretation of the law, he's not entitled to make blanket decisions with respect to fish in general and fishermen in general. It's particularly limited to situations involving aquaculture. Competition with aquaculture? Well, and in terms of certification, what would be an appropriate product for purposes of certification? If, in fact, you had fish that was being fished in the U.S. and it was competing with fish that was being caught in the wild from other countries, that would not be a proper subject of certification. It would not involve aquaculture. For aquaculture, you need to have a farmed product on one or the other side of the equation. Either it's got to be a farmed domestic product, or it's got to be a domestic product, in this case fish caught in the wild that's competing with a farmed product that was being imported. So I don't think, given the limitations in the statute, I don't think that it would be appropriate for them just to pull in fish from any sources and include that in the net income tests that we're looking at in Subpart C. But it is a net income determination. Yes, sir. Now, in order to reach net income, you need to know what the expenses are regarding that particular determination. Yes, sir. So if I fish for salmon and I make $2,000 net income from salmon, would it be accurate that maybe the cost of that particular gross revenue would have to be deducted in order to get to the net income? Yes, sir. Does it require the secretary to also determine the costs that are separable? Yes, sir. So how would the secretary really do that? Well, the secretary could have. I mean, you know, in the facts of this case, we certainly provided net income when it came to fishing from all sources and for Schedule C. He also provided income data for his income from fishing for salmon. If, in fact, the secretary believed that on investigation, he could not attribute a percentage of the expenses to salmon, he could have asked for additional information to support the decision. But on Schedule C, you'd have all of your expenses all lumped together and all of your income lumped together. Yes, we do, Your Honor. So trying to decipher that particular determination would be somewhat more difficult for both parties, wouldn't it? Well, Your Honor, that was what was required by the secretary at the time. I mean, the only thing that was required by the secretary at that time was Schedule C information. Which? That Mr. Steen, I'm sorry, excuse me, Your Honor, but that Mr. Steen submitted the additional information on salmon was to demonstrate that there has been a dramatic decline in his income associated with salmon fishing in the two-year period. But that was not requested data from the secretary's end. But what is unreasonable on the secretary's part to determine just the net income as shown on Schedule C and just making that simple determination? I believe it was, Your Honor, because Schedule C is not tied to the certified product. But that's what was requested of Mr. Steen at the time and others. I mean, that was the only, if you looked at the regulations at the time, Your Honor, that's all that was required. It was Schedule C data. And, in fact, the way the secretary defined net fishing income at that time was the number, the bottom number, either gain or loss on Schedule C. It was not tied in any respect to fishing income or to the certified product. Did you submit separate gross numbers for salmon? Absolutely, Your Honor, he did. With respect to the expenses also? He submitted gross income numbers, Your Honor. What about expenses? He didn't, Your Honor, but the secretary could have requested, I believe, the additional information, and consistent with the remedial nature of the statute and the way that the courts have always interpreted the obligations on the part of the secretary and on the part of the applicant, it would seem to me that if, in fact, that was going to be the basis of the decision, the secretary should have given Mr. Steen an opportunity to supplement the response and provide the additional information if he felt that that was the deficiency in the submission. Mr. Coffman, you posited kind of the other side of the coin, I think, in your examples. Is there no way in which a fisherman whose actual fishing income from salmon increases but his net income decreases? That could happen, Your Honor. Well, is there some other way he's precluded from participating, is what I'm getting at? No, only if his total net income was over $2.5 million, and at that point it would be a progressive elimination of the benefits. So you think the situation could be reversed and somebody could get a windfall? You know, windfall, Your Honor, it's $10,000 maximum and it's retraining benefits, but in that sense, yes, Your Honor. I mean, it would be totally tied to factors absolutely independent from import competition. One further question on the net farm income. You've argued that the fishing income ought to be specific to the commodity that's being imported. Would you make the same argument with respect to the term net farm income if this were a farm case? Your Honor, I believe it should be. That's kind of an odd – to say net farm income means net potatoes income, if you're a farmer who's farming potatoes, turnips, carrots, and beans, right? That's not a natural way to read the language, I would think. In which way, Your Honor? To say that net farm income – the statutory term net farm income ought to be interpreted to mean net income from one commodity, even though your total farm income is a very large – much larger and different number. But, Your Honor, there are – in the first instance, it's net farm income as determined by the Secretary. Well, I understand. Secondly, in that very section of the statute, the very beginning says that benefits will be conferred – cash benefits will be available to those adversely affected commodity producers covered by the certification. Adversely affected does not appear prior to that in the statute, and I don't believe it appears anywhere else in the statute. If adversely affected doesn't mean by reason of imports, then the question is what does it mean? And we have the other provision that we cited earlier in 2401.82, in which it does tell you that if different classes of goods are involved, that they should make the determination with respect to the different classes of goods. We have consumed your rebuttal time with questions, but because you've been questioned extensively, we'll restore your full rebuttal time. Thank you very much, Your Honor. And if Mr. Silva-Wren needs an equivalent amount of time, I'd still like if you could add the – what is it? Five minutes? Yeah, to Mr. Silva-Wren's time. You shouldn't feel an obligation to use it all if you don't need it, but if you do, it's available to you. There you go. Thank you, Your Honor. May it please the Court. The Department of Agriculture's determination is supported by substantial evidence in accordance with law. I'd first like to answer, Judge Gleisen, your question concerning the Schedule Cs. At JA304 and 306, Mr. Steen's Schedule Cs specifically state principal business is fishermen. So can I answer your question? Well, not quite, because if I understand it, there's been – and I believe you've been the lawyer on all of these cases, so I suspect you're familiar with all of them – there have been several CIT cases involving the question of whether, when you say Schedule C, you really mean everything on Schedule C. And to take my case of the fisherman who not only has income from halibut and salmon, but also runs a pleasure boat cruise business on the side, and he lumps all of those into Schedule C. Is it the government's position that, at least under the old form of the regulation, or perhaps also under the new form of the regulation, that that is the pertinent number to look at, the Schedule C number? Or is it the Schedule C number with the pleasure boat stripped out, leaving only fishing income? Your Honor, I reckon that situation is not before us today, and I'm going to get to it. Well, but it isn't directly in front of us. But what I'm really trying to test is how firm your proposition is that you are – that the Secretary's position is that it is Schedule C. Because if not, if the Secretary says Schedule C, except when Schedule C doesn't seem to be an appropriate measure of something, then we're looking at a different kind of deference. Do you understand my point? Yes, Your Honor. Okay. And under the regulations in existence at the time of Mr. Steen's application, I would have to say it's Schedule C. They don't appear to, because they require net fishing income to be net profit or loss, excluding payments under this part, reported on IRS Schedule C or CEZ. Well, that's a little ambiguous because it's net fishing income is the profits, but profits of what? Profits of all income of the sole proprietorship or profits only from fishing? Well, what's the government's position on this? You've had several of these cases. What's your position? That particular situation where the Schedule C is encompassed income other than the fishing business, as far as I'm aware, has not particularly come up. There have been a couple instances where the lower court has remanded for a separate determination. Well, I thought it had come up in a case called Rood, a case called Tron. Well, if it hasn't. I don't want to say it hasn't come up. Sullivanoff, does that ring a bell? Sullivanoff definitely rings a bell with me, Your Honor. All right. That was a case in which there was actually a discussion of this very issue. But I don't want to waste a lot of time on this because, as you say, that's not exactly this case. But I do want to try to get an idea of what the government's position is on this in order to be able to say either your position is that it's Schedule C or your position is it's actually net fishing income, including all fish and crabs. Well, it's net fishing income, certainly under the new regulation. It's net fishing income, including all fish and crabs. Under the regulation at issue here, I really don't feel comfortable making a determination that the Secretary, I believe, would have to make in the first instance. All right. And I believe the Secretary would deserve deference in making that determination if that was at issue in front of the Secretary because the Secretary does have the right to interpret its own regulations. And if there is an interpretation at issue, I should not be making that interpretation in court. Okay. All right. Because Mr. Steen has not demonstrated that his net fishing income has declined during the applicable period, he does not qualify pursuant to the statute. Mr. Steen contends that because the statute in 2401A refers to instructs that the Secretary shall treat each class as a separate commodity in determining eligibility for purposes of 2401E, that means somehow the net farm income should be defined as a should be the equivalent of a separate commodity. However, when 2401A refers to 2401E, it's referring to the instances where 2401E specifically uses affected agricultural commodity, which is 2401AA1A and AA1D. There's no basis to believe that Congress, when implementing a statute, would use affected agricultural commodity in one subsection and then use net farm income to mean the exact same thing in a subsection that's only one subsection away. Congress used net farm income. Now, because the Secretary determined that this would apply to fishermen in certain instances, the Secretary had to implement a regulation which would apply the net farm income requirement, which is what it is, a requirement to fishermen. And the Secretary's regulation defined net fishing income for purposes of the net farm income determination to be all net fishing income reported to the IRS. Pursuant to the relevant case law... All net fishing income reported to the IRS. That's the Secretary's view under both the old and the new regulation? It has defined net fishing income to... Yes. What you said is the net of all fishing income. Yes, sir. All right. Well, I think if that's what you really mean, you've answered the question that I was asking at the beginning, as to what you said the Secretary hadn't really taken a position. Because if what you really mean is it excludes non-fishing income, then we've answered the Schedule C question with respect to cases in which there is some non-fishing income. That may be the case, Your Honor. I still believe that the Secretary must make that determination in the first instance. But I do see what you're saying. To the extent that it has been defined as net fishing income, I agree with Your Honor's statement. That net fishing income can only... It is all net fishing income. But the problem is in the regulation it's defined as Schedule C. And I would defer to the Secretary's determination in interpreting its own regulation. But you don't know what it is? With respect to these cases in which there is other income. I don't think that determination has been made by the Secretary, Your Honor. All right. What about the reverse situation? I was asking Mr. Kaufman about where the net fishing income actually increases. Let's see, is that the example that he gave? Where the net salmon income increases? The net salmon increase, but the overall... Pursuant to the statute, if the net farm income had decreased, even though that for some reason the net salmon income may have increased, he would qualify pursuant to the statute of regulations.  But for purposes of net farm income under 2401A1C, that requirement would be met. There are other requirements that still must be met. For instance, the $2.5 million, which I'd like to point out, is not a net income prohibition from receiving relief. It's a gross income prohibition. So Congress clearly knew how to distinguish gross income from net income and knew how to distinguish, when it was drafting this legislation, net income from the affected agricultural commodity. If Congress had intended a fisherman, a farmer or a fisherman, to qualify for the statute solely based upon a decline in income from their affected agricultural commodity, Congress would have put in the legislation the producer's net income from the agricultural commodity decrease, not their net farm income, which in this case the Secretary has reasonably applied as net fishing income. For these reasons, we ask that the Court affirm the trial court's decision below and dismiss this action. Thank you. Could I ask you, are there other appeals pending on this related issue? I would have thought this was something that was almost sui generis, but then I came across other cases in the Court of International Trade. I'm not sure how much of the iceberg there is beneath this little piece of it above the line. I'm not assigned to any other cases which have been appealed based upon this same determination. In fact, I'm assigned to about, I'd say, about half or more of these USDA cases. This is the only one I appeal currently. Okay, and how many of them are there or have there been before the CIT, roughly? I believe in the 60s. 60s of cases? Yes. Okay, and dealing with this fishing or farmhand fishing? I'm not counting the ones dealing with people who work in factories and all those kinds of cases, the Motorola type cases. Solely with regard to Department of Agriculture, as distinguished from Department of Labor. Right. Every single one that has been filed has been by a fisherman or a lobsterman or something coming from the sea, Your Honor. Involving essentially this issue over and over again? No, there's been various different issues. But they've all 60 fisherman cases? Approximately. I believe it's a few more of 65, 64, somewhere around there. Okay, thank you. Thank you, Your Honor. And this is the first one on appeal? This is the first and, as far as I know, the only one currently on appeal, Your Honor. Thank you, Your Honor. Mr. Coffman, we reserved your full rebuttal time again. You don't have to use it all, but you're invited to if you need it. I would just like to point out that in the statute, and Mr. Silberbrand referred to that, is that when Congress put in a limit on income at $2.5 million of adjusted gross income, they specifically referred to, they made a statutory reference, they knew how to refer to the statute when it was important for them to do so. In defining net farm income, although the government continues to point out that there was a generally accepted definition of that and points to the Internal Revenue Service regulations and statute, there's nothing in the statute itself that would direct you specifically to any particular definition of net farm income. What it does do, however, though, as I mentioned before, is to limit that definition by the phrase, as determined by the Secretary. If you read out of that any obligation on the Secretary's part to render a determination that's fact-specific as to the very cases that are before them, you've basically read that parenthetical out of the statute. And for the Secretary, in our case, and in Mr. Steen's case, to define his net fishing income merely by reason of an IRS reporting mechanism, Schedule C of Form 1040, in our view, has taken the responsibility that is the Department of Agriculture's and transferred it to the Internal Revenue Service because as the Internal Revenue Service dictates what needs to be put on Schedule C, that's what was submitted and that was what was required and that was how it was defined. I don't see any room in here for any definition of net fishing income that was any different than the information and the income and net income that was reported on Schedule C. If someone had only one fishing commodity, salmon in this case, that's it, and that person reported net fishing income from that one commodity on Schedule C, would you have a quarrel with the calculation of net fishing income as it shows up in Schedule C or would you agree that that is an appropriate way of calculating net income for that one commodity? What I'm asking is when you say the Secretary has to make a case-by-case determination, what I'm asking is if you set aside your concerns about the multiple commodities and then perhaps even non-fishing activities, set those aside and just look at one commodity, are you arguing that Schedule C is an inappropriate proxy for net income period or are you simply saying that, oh, it's fine as long as you are talking about one commodity but it runs into trouble when you talk about multiple? The latter, Your Honor. If it was just one commodity, we have no problem with the methodology of deducting expenses from income and deriving a result that would be a net profit number or loss. With all of the various adjustments that I have signed off on? We're not trying to tie the Secretary's hands and say you can't look to something. The problem here is that what they refer to, and it's the language for all cases, not in a particular instance where they then went there and they looked to see what income was being reported. Was it limited to the commodity that was subject to certification? And then was that reasonable? Yes. Here what they said was this is what you submit. You submit Schedule C in all instances, and if there's an increase from year to year, you lose. If there's a decrease, you win. And we don't care that it was the increase or decrease was a result of certified product or not. That's the problem. And the problem with what we put in our submissions in terms of the way this works in operation, as Judge Archer asked before, was that a fisherman who basically increased his salmon income and net salmon income over a period of the one year that's been from one year to the next, but had tremendous losses in terms of his other fishing activities, totally unrelated to import competition, totally unrelated to anything this statute was designed to address, he will qualify for benefits because his total income from one year to the next dropped. Whereas in this case, we have a demonstration that Mr. Steen had a tremendous drop in income from salmon fishing, which is the subject of the certification, but because his other income increased enough to offset those losses, he's denied benefits. The government has said that what they're addressing is those most harmed by import competition. Congress has addressed those standards. They've decided there's a cutoff of $2.5 million, and they've decided that if you, and we believe if you read this correctly, is that if you have a loss in income from the certified product, you'd be entitled to relief. That's harm from import competition. The standards that the government has set up here have nothing to do with that. A relative increase or decrease just doesn't address those problems, Your Honor,  But if you start defining each commodity separately, aren't you running into the same problems of trying to allocate the cost of deriving that income? If only salmon would be involved, you could throw all of your costs against salmon. Therefore, you would be losing money on salmon but making money on other products, which are still reported on Schedule C. Well, Your Honor, the department is still assigned with making an investigation. They still have to look at the reasonableness of the data that's submitted. That doesn't go away. I mean, is it any more reasonable for someone to allocate expenses and to present that to the Department of Agriculture than it would be to look at something that exists, even though it's not tied to the facts of this case, it's not tied to the product, and merely say because that number increases from year to year, we're going to use it. There may be a burden there, I admit. But at the end of the day, isn't that a better solution than having people denied benefits such as Mr. Steen, even though he clearly demonstrated his income from salmon dropped by 75 percent from one year to the next? Well, but, you know, I understand your argument that it looks perhaps at first blush, maybe after first blush, a little bit perverse. But if you look at it in terms of which people can be thought to have adjusted to the imports successfully, and we don't want to throw benefits in their direction, which people have not been able to adjust successfully, you might make the case that a person in Mr. Steen's position has been able to make the transition. Yes, he lost money in one area. He moved to another area, and he prospered in that other area. That's what we want by way of comparative advantage. He may be much more successful in another commodity other than the one that's the import. We want to encourage that. That's what the whole transition to new areas of economic enterprise is about. Why isn't that rational for Congress and, by extension, the Secretary of Agriculture to conclude as an approach to the problem? It was rational, Your Honor. And Congress did address it. But they addressed it by a different means than the Secretary's addressing it. What Congress said was you will determine the dollar amount of your benefits by the amount of your production in the marketing year, which in this case would be 2002. If that production has gone down, you get less money. You don't get the $10,000. You get less. They're not saying everybody who qualifies automatically gets $10,000. If you're producing less, you get less. That's Congress's solution to the problem. The Secretary has said you get nothing. That's not Congress's solution. Congress did address this problem. Secondarily, the ability to get retraining benefits, which is critical in terms of that transformation and that ability to then address and to go into different areas and address your income needs, is not available unless you qualify for the cash benefits. Very well. Thank you. Your Honor. The case is submitted.